IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03318-KLM

JEREMY A CAMPBELL,

    Plaintiff,

v.

USAA CASUALTY INSURANCE COMPANY,

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant's **Motion for Judgment on the Pleadings** [#24] (the "Motion"). Plaintiff filed a Response [#25] in opposition to the Motion [#24], and Defendant filed a Reply [#26]. The Court has reviewed the Motion [#24], the Response [#25], the Reply [#26], the entire case file and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#24] is **GRANTED**.[1]

## I. Background[2]

This case arises from a motor vehicle accident (the "Accident") that occurred in Alaska on August 4, 2020, in which Plaintiff was seriously injured. *Compl.* [#5] ¶ 7.

---

[1] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties. *See* [#4]; *Consent* [#14]; *Order* [#15].

[2] For the purposes of resolving the Motion [#24], the Court accepts as true all well-pled, as opposed to conclusory, allegations made in Plaintiff's Complaint [#5]. *See Cowboys for Trump v. Oliver*, No. 21-2015, 2022 WL 454169, at *1 n.1 (10th Cir. Feb. 15, 2022) (discussing motions filed under Fed. R. Civ. P. 12(c)).

Plaintiff is an individual who resides in Colorado. *Id.* ¶ 1. Defendant is a foreign corporation licensed to issue automobile insurance policies in Colorado. *Id.* ¶¶ 2-3. The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the parties reside in different states and diversity exists. *See Notice of Removal* [#1].

In 2003, Plaintiff's wife purchased an automobile insurance policy (the "Policy") from Defendant. *Compl.* [#5] ¶ 19; *Pl.'s Ex. 2*, *Policy Information* [#25-2] (the "Policy Information") at 5-6.[3] The Policy's limits for bodily injury ("BI") coverage are $100,000 per person, and $200,000 per accident. *Compl.* [#5] ¶ 14. The Policy's limits for underinsured motorist ("UIM") coverage are $25,000 per person and $50,000 per accident. *Id.*

The Policy Information, issued in 2003 when Plaintiff's wife purchased the Policy, includes a four-page document explaining the Policy's UIM coverage, presented as an enclosure to the "Policy Packet" titled "999CO CIC-UM/UIM Selection Form" (the "Selection Form"). *Policy Information* [#25-2] at 6, 49-52. The first sentence of the first page of the "Policy Packet" instructs the recipient to "[r]ead enclosures carefully and keep them with your policy record." *Id.* at 6. The first substantive paragraph of the first page of the Selection Form states:

Uninsured Motorists Bodily Injury Coverage (UMBI):

• Is provided automatically if liability coverages are written.

---

[3] "A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is treated as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992). In deciding a motion for judgment on the pleadings, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Cnty. of Santa Fe v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002) (discussing the review of a Fed. R. Civ. P. 12(b)(6) motion). The Policy Information is referenced in the Complaint [#5] as "Exhibit 2," *see Compl.* [#5] ¶ 19, but appears to have been accidently omitted from the Court's docket when removed to federal court despite having been attached to the Complaint [#5] in state court, *see generally id.* However, Plaintiff filed the Policy Information as an attachment to the Response [#25], and the Court therefore considers this document for the purpose of resolving the present Motion [#24].

> • May be rejected by completing the form on page 3.
>
> • Must be issued in limits of $25,000/$50,000 Bodily Injury. Higher limits are available up to the Liability Bodily Injury Limits of your policy. If you want UM limits higher than your current BI limits, you must raise your BI limits and purchase UM coverage in the same amount as the increased BI coverage.
>
> • Protects if you are injured by an uninsured/*underinsured* motorist who is at-fault.

*Policy Information* [#25-2] at 49 (emphasis added).

Plaintiff alleges that "at no point in [the Policy Information] does it contain a written rejection of equal amounts, explanation that the elected amounts are different/lower, or even an explanation that they have elected to have lesser amounts." *Compl.* [#5] ¶ 19 (citing *Policy Information* [#25-2]). In so stating, Plaintiff appears to allege that the Policy Information does not explain that the default UIM coverage limits are $25,000/$50,000, and that neither he nor his wife expressed in writing their desire for UIM coverage at the default limits. *See id.*

Plaintiff was covered by the Policy at the time of the Accident. *Id.* ¶ 12. The Accident consisted of Plaintiff's brother's vehicle, in which Plaintiff was a passenger, rolling down a mountainside. *Id.* ¶ 8. As a result of the Accident, Plaintiff has incurred over $407,000 in medical expenses. *Id.* ¶ 17. The vehicle involved in the Accident was insured by Plaintiff's brother, and Plaintiff recovered $300,000 from his brother. *Id.* ¶¶ 9, 10 n.1. Defendant tendered $25,000 to Plaintiff, the limit of the Policy's UIM coverage. *Id.* ¶¶ 10-12, 18.

In the Complaint [#5], Plaintiff asserts three claims against Defendant: (1) breach of contract; (2) bad faith breach of contract; and (3) unreasonable delay or denial of

insurance benefits. *Id.* ¶¶ 23-56. Plaintiff seeks payment of all unpaid UIM benefits; double the recovered benefit, and reasonable attorney fees and costs incurred thereof pursuant to Colo. Rev. Stat. § 10–3–1116; general damages to include emotional distress; special damages; and post-judgment interest. *Id.* at 11-12. In the present Motion [#24], Defendant seeks judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). *Motion* [#24] at 3.

## II. Standard of Review

"Judgment on the pleadings should not be granted 'unless the moving party clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading*, 442 F.3d 1239, 1244 (10th Cir. 2006) (citation omitted). A motion for a judgment on the pleadings "only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court." 5C Charles Alan Wright et al., *Federal Practice and Procedure* § 1367 (3d ed. 2022). A motion for judgment on the pleadings made pursuant to Fed. R. Civ. P. 12(c) is reviewed under the same legal standard as a motion to dismiss for failure to state a claim made pursuant to Fed. R. Civ. P. 12(b)(6). *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992).

The Rule 12(b)(6) standard tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be

granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) ("The complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." (quoting *Twombly*, 550 U.S. at 557)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Id.* (brackets in original; internal quotations omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that [a] defendant has acted unlawfully."  *Id.* at 678 (citation omitted).  To survive a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009). "[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)

(emphasis in original). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a factual allegation has been stated, "but it has not show[n] [ ] that the pleader is entitled to relief," as required by Fed. R. Civ. P. 8(a). *Iqbal*, 556 U.S. at 679 (second brackets added; citation and internal quotations omitted).

### III. Analysis[4]

The parties do not dispute that the Policy limits UIM coverage to $25,000 per person, or that Defendant issued a check to Plaintiff for $25,000 in UIM benefits following the Accident. *Scheduling Order* [#20] at 5. The key dispute in this case is whether the UIM coverage limitations were appropriate. *Compl.* [#5] ¶¶ 13-14. Plaintiff argues that the UIM coverage is inadequate as a matter of law because he and his wife "were not properly notified by [Defendant] of the option to increase the amount of UIM coverage under the policy as required by [Colo. Rev. Stat.] § 10–4–609(2)." *Response* [#25] at 1-2. Although he does not raise a contract reformation claim,[5] Plaintiff cites *Allstate Insurance Company v. Parfrey*, 830 P.2d 905, 912 (Colo. 1992), for the proposition that auto insurers are required to "provide their potential customers with notification of the nature and purpose of [ ]UIM coverage, and must offer them the opportunity to purchase

---

[4] Because the Court's jurisdiction in all claims addressed by the Motion [#24] is based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), the Court "must apply [Colorado] substantive law and federal procedural law." *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017) (citing *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 428 (1996)).

[5] Plaintiff argues that he "sufficiently set forth a claim for contractual reformation in his Complaint." *Response* [#25] at 7. The Court disagrees. The Complaint [#5] does not contain the word "reformation," or any variation thereof, and fails to address the elements of a contract reformation claim. *See Morris v. Belfor USA Grp., Inc.*, 201 P.3d 1253, 1260 (Colo. App. 2008) ("Contract reformation is an equitable remedy. . . . Reformation is permissible when either the parties made a mutual mistake or one party made a unilateral mistake and the other party engaged in fraud or inequitable conduct." (citations omitted)); *see generally Compl.* [#5]. Nevertheless, the Court considers whether Colorado law *requires* contract reformation in the present case.

such coverage . . . in an amount equal to [their] [BI] liability limits." *Response* [#25] at 8 (first brackets added; internal quotations omitted). Thus, at the outset, the Court considers Defendant's compliance with the requirements set forth in *Parfrey* to determine whether Colorado law requires reformation of the parties' contract.

**A.    Contract Reformation**

In *Parfrey*, the Colorado Supreme Court held that section 10–4–609(2) requires auto insurers to "do more than merely make [ ]UIM available" at the statutory minimum rates of $25,000 per person and $50,000 per accident. 830 P.2d at 913.[6] Under *Parfrey*, insurers have "a one-time duty to inform an insured in a reasonable manner calculated to permit the insured to make an informed decision on whether to purchase [ ]UIM coverage . . . at a level higher than the minimum statutory liability limits . . . ." *Id.* To determine whether an insurer has complied with its duty to make a "notification and offer . . . performed in a manner reasonably calculated to permit . . . an informed decision[,]" the *Parfrey* court considered a number of factors:

> [T]he clarity with which the purpose of [ ]UIM coverage was explained to the insured, whether the explanation was made orally or in writing, the specificity of the options made known to the insured, the price at which the different levels of [ ]UIM coverage could be purchased, and any other circumstances bearing on the adequacy and clarity of the notification and offer.

*Id.*

"[U]nder a *Parfrey* analysis, no one factor is dispositive . . . ." *Airth v. Zurich Am. Ins. Co.*, 488 P.3d 308, 312 (Colo. App. 2018) (citations omitted). When reviewing an insurer's compliance with *Parfrey*, courts must "look to the objective reasonableness of

---

[6] Although the *Parfrey* court considered an earlier version of section 10–4–609, Colorado state courts continue to apply *Parfrey* to the current version of section 10–4–609. *See, e.g.*, *Airth v. Zurich Am. Ins. Co.*, 488 P.3d 308, 312 (Colo. App. 2018).

[the insurer]'s offer, not the potential purchaser's subjective understanding." *Id.* at 313 (citing *Reid v. Geico Gen. Ins. Co.*, 499 F.3d 1163, 1169 (10th Cir. 2007)).

Plaintiff relies on *O'Sullivan v. Geico Casualty Company*, 232 F. Supp. 3d 1170 (D. Colo. 2017), to argue that Defendant failed to provide the UIM notification required by *Parfrey*. *Response* [#25] at 11-14.[7] In *O'Sullivan*, the court considered a defendant insurer's motion for summary judgment on claims of breach of contract, bad faith breach of contract, and unreasonable delay or denial of insurance benefits. 232 F. Supp. 3d at 1171. The *O'Sullivan* court denied the motion, in part because the defendant did not show as a matter of law that it complied with *Parfrey*. *Id.* at 1182. Applying the factors outlined in *Parfrey*, the *O'Sullivan* court found that exclusively online communications do not weigh in favor of sufficient notice. *Id.* at 1180. The court further found that an "Option Form," that did not need to be signed and returned, did not provide sufficient notice because:

> Plaintiff was not required to sign and return the form unless he sought to make changes to his coverage . . . .
>
> In addition, while the Option Form included a one-sentence statement advising [p]laintiff of his right to purchase [ ]UIM coverage equal to his BI limits . . . , that statement was found in the middle of the document, which itself was found deep . . . into approximately 40 pages of documents mailed to [p]laintiff after he had purchased his policy. Nothing called particular attention to either the Option Form or this statement. Further, applying the non-exclusive *Parfrey* factors, the Option Form also did not include pricing information reflecting what it would have cost [p]laintiff to purchase higher [ ]UIM coverage.

*Id.* at 1181-82.

---

[7] The Court notes that *O'Sullivan* is, in fact, the only case in the Response [#25] that Plaintiff cites for his arguments regarding *Parfrey*, the legal sufficiency of his breach of contract claim, and his extracontractual claims. *See generally Response* [#25].

Plaintiff argues that, as in *O'Sullivan*, the Selection Form in the present case did not provide sufficient notification because it did not need to be signed, it was found deep on pages 55 to 63 of the documents sent to Plaintiff's wife, and nothing called particular attention to the Selection Form or its contents. *Response* [#25] at 13-14. Plaintiff further argues that the *O'Sullivan* "Option Form," which was found to provide insufficient notice, contained a list of available UIM coverage similar to that of the Selection Form. *Id.* at 13. However, Plaintiff fails to acknowledge that the present Selection Form *does* contain pricing information, a feature that the *O'Sullivan* court stated would have weighed towards providing sufficient notice. *See Policy Information* [#25-2] at 51; *O'Sullivan*, 232 F. Supp. 3d at 1182.

Defendant argues, on the other hand, that *Airth* is more analogous to the present case than *O'Sullivan*. *Reply* [#26] at 5. As Defendant points out, *Airth* was decided by the Colorado Court of Appeals one year after *O'Sullivan* was decided by a federal court. *Id.* The Court agrees with Defendant for the following reasons.

The *Airth* court applied the Colorado Supreme Court's *Parfrey* factors to determine whether a UIM selection form, included in a package of several insurance documents, provided sufficient notice and explanation of UIM coverage. *Airth*, 488 P.3d at 313-14. The *Airth* court found that the UIM selection form acted as a standalone document that prominently positioned the required information, written in clear and understandable terms. *Id.* at 312. Despite the fact that the UIM selection form contained no pricing information or signature from the insured, the *Airth* court found the selection form to provide sufficient notice under *Parfrey*. *Id.* at 311-12. In doing so, the *Airth* court expressly held that "a written rejection is required only if the insured declines the minimum

- 9 -

amount of [ ]UIM coverage." *Id.* at 314 (citing *Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735, 741 (10th Cir. 2009)).

Plaintiff attempts to distinguish the present case from *Airth* by pointing out that a footnote in *Airth* acknowledges that the plaintiff insured's attorney signed a document attesting that he reviewed the UIM selection form. *Response* [#25] at 10-11 (citing *Airth*, 488 P.3d at 311 n.4). The Court notes that this signature is mentioned nowhere else in *Airth* and seems to have played no role in the court's conclusion. *See generally Airth*, 488 P.3d 308. Accordingly, the Court rejects Plaintiff's argument and finds that the Policy Information is sufficiently analogous to the documents considered in *Airth*.

Here, while the Selection Form is included in a lengthy packet, it acts as a standalone enclosure. *See Policy Information* [#25-2] at 49-52. Further, the first page of the Policy Information calls attention to the Selection Form and directs the insured to "[r]ead enclosures carefully." *Id.* at 6, 49-52. The first page of the Selection Form provides a detailed explanation of UIM coverage written with clear language in bullet point format. *See id.* at 49 ("[UIM] [m]ust be issued in limits of $25,000/$50,000 Bodily Injury. Higher limits are available up to the Liability Bodily Injury limits of your policy."). The second substantive page of the Selection Form provides the pricing information for additional UIM coverage and the ability to change UIM coverage by returning a completed form, thereby providing greater notification than the documents in *Airth* which a Colorado state court found to be sufficient. *Id.* at 51; *see Airth*, 488 P.3d at 311-12.

Plaintiff argues that the Policy Information documents did not provide sufficient notice because Defendant "has not provided any signed document[,]" but the Court notes that a signature is not required under *Parfrey*. *Response* [#25] at 6; *Airth*, 488 P.3d at

314; *see also Progressive Cas. Ins. Co. v. Taggart & Assocs., Inc.*, No. 15-cv-02801-KLM, 2017 WL 5188340, at *4 (D. Colo. Feb. 1, 2017) (stating that under section 10–4–609(2), "a signature is required only when [ ]UIM coverage is rejected entirely").

Accordingly, the Court finds that the Policy Information was reasonably calculated to allow the insured to make an informed decision regarding UIM coverage because the insured was clearly directed to a detailed written explanation and pricing information. *Cf. Jewett v. Am. Standard Ins. Co. of Wis.*, 178 P.3d 1235, 1239 (Colo. App. 2007) (finding in a case about additional personal injury protection insurance ("APIP") that an insurer's forms were "reasonably calculated to permit [the insured] to make an informed decision" because the forms "clearly set forth the purposes of [personal injury protection insurance], the coverages available, and the premiums for various options, and they gave [the insured] the opportunity to purchase APIP by checking a box on the form and returning it . . . ").

Because Defendant's actions were reasonably calculated to allow Plaintiff's wife, who purchased the Policy, to make a reasonable decision regarding UIM coverage, the Court finds that no contract reformation is required under Colorado law. *See Airth*, 488 P.3d at 312-13; *Taggart*, 2017 WL 5188340, at *4-5 (finding that contractual reformation was not necessary because an insurer complied with *Parfrey*'s notice requirements). Therefore, Defendant is only contractually obligated to provide UIM coverage to Plaintiff at limits of $25,000 per person and $50,000 per accident. *See Compl.* [#5] ¶ 14. Thus, the Court considers Plaintiff's claims in light of these contractual obligations.

**B.     Breach of Contract**

To sufficiently state a breach of contract claim under Colorado law, a plaintiff must plead: "(1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted).

Plaintiff alleges that Defendant has "refused to provide Plaintiff with certain UIM benefits pursuant to the contract of insurance." *Compl.* [#5] ¶ 26. However, Plaintiff concedes that "Defendant has tendered the limits of their [sic] policy[,]" in the amount of $25,000. *Id.* ¶¶ 14, 18; *Scheduling Order* [#20] at 5. The Court finds that because this case does not require contract reformation, Plaintiff cannot base a breach of contract claim on Defendant's failure to pay UIM benefits where Defendant has already paid the contractually required UIM benefits. The Court further finds that Plaintiff does not allege any other failure to perform contractual obligations apart from the payment of UIM benefits. *See generally Compl.* [#5]. Therefore, Plaintiff fails to adequately plead the third element of a breach of contract claim, i.e., Defendant's failure to perform. *See Diodosio*, 841 P.2d at 1058. Thus, Plaintiff does not sufficiently plead a breach of contract claim. *See MacKinney v. Allstate Fire & Cas. Ins. Co.*, No. 16-cv-01447-NYW, 2016 WL 7034977, at *6 (D. Colo. Dec. 1, 2016) (dismissing a breach of contract claim with prejudice because a defendant insurer paid the full UIM benefits required by the relevant insurance policies); *Trujillo v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-0410-WJM-NRN, 2019 WL 3996882, at *7 (D. Colo. Aug. 23, 2019) ("[The insurer] is not required to pay UIM benefits . . . . Therefore, [the insured] cannot state a breach of contract claim for UIM benefits." (citation omitted)).

The Motion [#24] is thus **granted** as to the breach of contract claim.

C.  **Extracontractual Claims**

Plaintiff argues that he raises legally cognizable extracontractual claims—bad faith breach of contract and unreasonable delay or denial of insurance benefits—because "he has a viable contract reformation and breach of contract claim."  *Response* [#25] at 16 (citing *O'Sullivan*, 232 F. Supp. 3d at 1182).  The Court notes that the Complaint [#5] does not raise a contract reformation claim, and that, for the reasons stated above, Plaintiff does not sufficiently plead a breach of contract claim.  *See generally Compl.* [#5]. Plaintiff further argues that he sufficiently pleads extracontractual claims because "the Court in *O'Sullivan* did not dismiss the plaintiff's extra-contractual claims, including bad faith, as a result of [the defendant] paying the UIM policy limit of $25,000 to the plaintiff." *Response* [#25] at 16 (citing *O'Sullivan*, 232 F. Supp. 3d at 1182).[8]

Defendant argues that "because no additional covered benefit is owed, there is nothing to unreasonably delay or deny."  *Motion* [#24] at 14.  The Court agrees because "[i]t is settled law in Colorado that a bad faith claim must fail if . . . coverage was properly denied and the plaintiff's only claimed damages flowed from the denial of coverage." *MarkWest Hydrocarbon, Inc. v. Liberty Mut. Ins. Co.*, 558 F.3d 1184, 1193 (10th Cir. 2009) (citations omitted); *see Coleman-Domanoski v. St. Paul Guardian Ins. Co.*, 456 F. Supp. 3d 1250, 1262 (D. Colo. 2020) (holding that a claim for statutory benefits failed as a matter of law because no UIM coverage was available to a plaintiff); *Markel Ins. Co. v. Hollandsworth*, 400 F. Supp. 3d 1155, 1160 (D. Colo. 2019) (same); *Trujillo*, 2019 WL

---

[8]  Plaintiff correctly states that "failure to act in good faith . . . leads to tort liability[,]" but does so without arguing why Defendant failed to act in good faith.  *See Response* [#25] at 16 (citation omitted).

3996882, at *9 (same); *MacKinney*, 2016 WL 7034977, at *9 (same); *Walkinshaw v. USAA Cas. Ins. Co.*, No. 19-cv-01972-PAB-MEH, 2022 WL 356825, at *8 (D. Colo. Feb. 7, 2022) (dismissing bad faith denial of insurance claims because a "defendant's denial of coverage was proper as a matter of law").

The Motion [#24] is thus **granted** as to both the bad faith breach of contract and unreasonable delay or denial of insurance benefits claims.

### IV.  Conclusion

Based on the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#24] is **GRANTED**, judgment is entered in favor of Defendant on all claims, and the Clerk of Court shall **CLOSE** this case.  *See* Wright, § 1368 (stating that courts enter judgment when granting Rule 12(c) motions).

Dated: July 11, 2022

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge